United States District Court
Southern District of Texas
**ENTERED**
September 03, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Maria Robinson, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H- 20-3760 |
| | § | |
| Ethicon Inc. and Johnson & Johnson, | § | |
| | § | |
| *Defendants*. | § | |

**Memorandum Opinion and Order**

Pending before the court is a motion to strike the supplemental expert opinions of Dr. Jimmy Mays and Dr. Niall T. M. Galloway. Dkt. 125. Defendants Ethicon Inc. and Johnson & Johnson ("Defendants") filed this motion after plaintiff Maria Robinson submitted supplemental reports for these experts on March 20, 2021 (Mays), and May 24, 2021 (Galloway). *See* Dkt. 125 & Exs. B, C. After considering the motion, amended response, reply, the record, and the applicable law, the court is of the opinion that Defendants' motion should be GRANTED.

**I. Background**

Robinson originally filed her lawsuit against Defendants on March 23, 2013. Dkt. 1. Robinson's claims relate to the TVT-Obturator (TVT-O), which was implanted in Robinson's body on October 27, 2011, in Houston, Texas. Dkt. 1 (short-form complaint); Dkt. 63-1 (first amended master long form complaint); Dkt. 62 (transfer order). Her claim was one of more than 100,000 cases that were part of the Ethicon pelvic repair systems products multi-district litigation ("MDL") presided over by Judge Joseph Goodwin in the Southern District of West Virginia. *See In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12=md-2327, MDL No. 2327 (S.D.W. Va.). Judge Goodwin organized the MDL cases into waves, and Robinson's case was in

Wave 11.  *See* Dkts. 16, 125, 127.  For cases in Wave 11, the plaintiff and defendants in each case were limited to no more than five experts each, exclusive of the treating physicians.  Dkt. 16.  The plaintiffs' expert disclosures were due on May 24, 2019, the defendants' expert disclosures were due on June 24, 2019, and the rebuttal disclosures were due on July 1, 2019.  *Id.  Daubert* motions were due on August 15, 2019.  *Id.*

On March 25, 2019, Robinson filed a motion to extend the expert witness designation deadline.  Dkt. 26.  Judge Goodwin denied the motion.  Dkt. 60.  Defendants moved for partial summary judgment and moved to exclude certain expert testimony of Galloway and Robert P. Tremp, Jr.  Dkts. 45, 47, 49.  Robinson moved to strike Defendants' non-retained experts.  Dkt. 56.  Judge Goodwin granted the Robinson's motion to strike to the extent Defendants identified more than five experts.  Dkt. 61.  On October 20, 2020, prior to ruling on the motion for partial summary judgment and the Defendants' *Daubert* motions, Judge Goodwin transferred Robinson's case to this court.

In the transfer order, Judge Goodwin noted that he believed this case and the other cases he was transferring at the same time would be more expeditiously concluded in the venues in which the claims arose.[1]  *See* Dkt. 62.  In that order, Judge Goodwin stated,

> ***Upon transfer, I urge the receiving court to immediately set these cases for trial without reopening discovery.  Further discovery will***

---

[1]  In addition to the case-specific motions noted above, there were general motions from earlier waves of the MDL that the parties in this case adopted by incorporation, and Judge Goodwin had not issued an order adopting his prior rulings on these motions for the Wave 11 cases prior to transferring to their own venues.  Dkt. 106.  He noted that the parties needed to advise the transferee court which of these motions remained pending and were in need of a ruling.  *See id.* The Defendants originally asserted that this court should rule on all of these previous *Daubert* motions, which are all listed in the joint discovery case management plan but do not impact the instant issues.  *Id.*  However, the parties have since stipulated that "this Court may adopt Judge Goodwin's prior *Daubert* rulings on admissibility of the General Causation experts' opinions and testimony . . . ."  Dkt. 122.

> *only result in unjust delay.  Extensive development of these cases over a period of years has made further action completely unnecessary.*

Dkt. 62 (emphasis in original).

On November 10, 2020, this court denied the motion for partial summary judgment and the Defendants' *Daubert* motions without prejudice to refiling.  Dkt. 84.  The next day, it ordered the parties to submit a joint docket control order and to file a joint discovery/case management plan.  Dkt. 105.  On November 24, 2020, the parties filed a joint discovery/case management plan. Dkt. 106.  In that plan, they noted that experts had already been designated, Robinson would serve her supplemental disclosures pursuant to Federal Rule of Civil Procedure 26(e) by May 24, 2021, and Defendants would serve theirs by June 21, 2021.  *Id.*

On February 22, 2021, the court entered a docket control order that required "expert witnesses for plaintiff/counter-plaintiff" to be "identified by a report listing the qualifications of each expert, each opinion the expert will present, and the basis for each opinion" by the dates the parties had listed as dates for supplements in their joint discovery/case management plan.  *See* Dkt. 110.  This is the court's standard docket control order, and the court has since clarified with the parties that this deadline was meant as a deadline for the supplemental reports listed in the joint discovery/case management plan, not a deadline for new designations.  *See* Dkt. 124.

On June 25, 2021, Defendants filed a letter brief requesting a pre-motion conference pursuant to the court's procedure 6(c), which addresses discovery disputes.  Dkt. 123.  One of the subjects of the dispute leading to the letter brief was whether Mays's and Galloway's supplemental opinions should be stricken.  *Id.*  The court held a conference on July 19, 2021, to address the parties' disputes; it did not rule on whether Mays's and Galloway's supplemental reports should

be stricken during the conference and instead stated that a motion may be in order.  *See* Dkt. 124.

Two days later, Defendants filed the instant motion.  Dkt. 125.

Defendants contend that Mays's and Galloway's supplemental reports contain new opinions based on information that was available to the experts at the time of their original reports and that the supplements filed by Robinson after the case was transferred to this court are therefore improper under Rule 26(e).  Dkt. 125.  Robinson timely responded to the motion to strike, arguing that the reports used in the MDL were only generic reports and did not address the issues specific to Texas law and that Robison ought to be able to supplement to specifically address Texas's design defect requirements.  Dkt. 134.  She also asserts that Mays referred to a new article in the supplemental report—so it is not all information available at the time the original report was filed—and that, regardless, not supplementing earlier was substantially justified and harmless.  *Id.* Defendants reply that there is no reason Robinson's MDL expert reports could not address state law as experts throughout the MDL did disclose such opinions, that the one "new" article is not very new and was only part of a string cite, and that allowing the supplemental opinions is prejudicial as Defendants relied on the omission of these opinions in bringing their dipositive motion and preparing for this case for the past two years.  Dkt. 136.

The court will first provide the legal standard for supplementing expert reports and then discuss whether the supplements are proper.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(a)(2), expert reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B).  However, the rule also allows parties to "supplement these disclosures when required under Rule 26(e)."  Fed. R. Civ. P. 26(a)(2)(E).  Rule 26(e) requires parties to supplement

disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Under Rule 26(e), the "party's duty to supplement [an expert report] extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). The pretrial disclosures under Rule 26(a)(3) are due, unless otherwise ordered by the court, thirty days before trial. Fed. R. Civ. P. 26(a)(3)(B). The Advisory Committee Notes to the 1993 amendment to Rule 26 indicate that paragraph (a)(2), which is the paragraph requiring a report, "impose[s] an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26, notes (1993 amend.).

Under Rule 37(c)(1), if "a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The court may, in addition to or instead of this sanction, order payment of expenses and fees, inform the jury of the party's failure, or impose any other appropriate sanctions. *Id.*

## III. ANALYSIS

Defendants assert that the supplemental reports are not the types of supplements contemplated by the Rules and instead are an attempt to avert summary judgment by filing new

and improved reports.[2]  Dkt. 125.  Robinson contends that she filed generic reports in the MDL and that her Texas-specific reports are timely and permissible under the Rules and, if not, are substantially justified and harmless.  Dkt. 134.  The court will first consider whether the reports are timely and proper supplements and then, if not, whether the failure to timely supplement was substantially justified and harmless.

## A.      Are the Reports Timely and Proper Supplements?

Robinson timely filed her expert disclosures in the MDL on or before May 24, 2019.  *See* Dkt. 134.  She contends that these were generic reports meant to apply to thousands of plaintiffs and not tailored to any specific state law.  *Id.*  When the case was transferred to this court, the parties agreed to deadlines to provide supplemental discovery responses, including supplements to the expert reports.  *See id.*; Dkts. 106, 125.  Robinson submitted Mays's and Galloway's supplemental reports pursuant to this schedule.  These reports include an opinion about a safer alternative material, rather than an alternative surgical procedure, to address Texas's state law design defect requirements.  *See* Dkt. 134.  Robinson asserts that the opinions about safer alternative materials were "unneeded as a general matter in the MDL but required for compliance with Texas law."  *Id.*  She notes that Mays's initial report "provided a general overview of Dr. Mays' anticipated testimony *at that time*."  *Id.* (emphasis added).  She also notes that in asserting the opinions about safer alternative material Mays cites a new study not available at the time he filed his initial report.  *See id.*  She notes that Galloway's supplement relies on May's supplement.

---

[2] Defendants do not take issue with the first new opinion in Mays's supplement, which they agree "rests on information that was unavailable at the time of [Mays's] original report and supports a previously disclosed opinion."  Dkt. 125 (citing section III of the supplemental report).  They object to Mays's second and third opinion and to all of Galloway's supplemental report, which they contend just relies on the objected to opinions in Mays's supplemental report.

*Id.* She also argues that the supplements are timely because they were submitted prior to the pretrial disclosure deadline and the Rules do not require immediate supplementation, just supplementation in a timely manner. *Id.*

Defendants argue that while Robinson's "supplemental reports" were technically filed in compliance with the time requirements in the parties' agreement, most of the opinions are improper for supplemental reports because the experts rely on information that was available at the time they filed the original reports. Dkt. 125. Defendants assert that "the vast majority of [Mays's] new report consists of additions designed specifically to defeat the Defendants' fully briefed motion for partial summary judgment and [*Daubert*] motions filed in August 2019." *Id.* Defendants contend that every single document Mays refers to in support of his second opinion in the supplemental report was produced and available to him prior to his 2019 report, and the sources he cites to support his third supplemental opinion were available "years, if not decades, before Plaintiff's 2019 expert deadline." *Id.* Defendants assert that Galloway's one-page supplement just indicates that he agrees with Mays's supplement for the same reasons, but Galloway also did not include an opinion about the safer alternative design in his original report. *Id.* Defendants contend that Robinson cannot "escape summary judgment by simply having a 'do-over' of discovery," and if she could, the expert disclosure deadlines would have no purpose. *Id.*

The court will first address Robinson's contention that the supplements are timely because they were made before pretrial disclosures were due. Under Rule 26(a)(3), pretrial disclosures are due "at least 30 days before trial" unless the court order otherwise. Fed. R. Civ. P. 26(a)(3). Robinson's argument is that Rule 26(e)(2) requires additions or changes to expert reports to be made "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2); *see* Dkt. 134. Certainly, supplements must be filed before the pretrial disclosures are due

7

under Rule 26(e)(2), but that applies to additions or changes to the original opinions, not entirely new opinions. Under Fifth Circuit law, the initial disclosures must be "complete and detailed," and a supplement is meant merely to supplement. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996). "These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Id.* It would not make sense for the rule requiring parties to make sure the opinions are finalized thirty days prior to trial to be interpreted to allow parties to present entirely new expert opinions that will likely lead to a need for more depositions on the eve of trial.

That brings the court to Robinson's argument that she was providing a general overview in her expert reports in the MDL and that it was necessary to supplement with opinions related to state-specific law when the case was sent to a Texas court. *See* Dkt. 134 ("Once this case was remanded to this Court, it became necessary for Plaintiff's experts, in compliance with Texas's products liability law, to posit more narrowly tailored safer alternative designs appropriate for the jurisdiction in which Plaintiff's case was to be tried."). While this is an interesting argument, it is not convincing. First, Judge Goodwin urged the court to set the case for trial "*immediately*" "*without reopening discovery*." He noted that more discovery would result in "*unjust delay*" and pointed out that "*[e]xtensive discovery . . . over a period of years has made further action completely unnecessary*." Dkt. 62 (emphasis in original). The Court does not take these words from a jurist who has significant experience with these cases lightly. Why would Judge Goodwin advise that the case was ready to go to trial if, instead, the experts still needed to offer opinions related to state law and depositions of the experts relating to these new opinions would likely be needed?

8

The MDL scheduling order does not indicate that the expert deadline applies only to general opinions and that state-specific opinions should be reserved until later. *See* Dkt. 16.   In fact, the scheduling order specifically refers to the procedure for motions related to specific causation experts in the MDL, and expert reports addressing specific causation would relate to the individual plaintiff even more than opinions for state-specific claims. *See id.* ("To the extent a challenged expert is both a general and specific causation expert, the parties must file a general causation motion in the main MDL 2327 and an individual causation motion in an individual member case.").   The MDL court can apply and in fact has applied law from other jurisdictions, including Texas. *See Lankston v. Ethicon, Inc.*, No. 2:12-CV-00755, 2016 WL 5843723, at *3 (S.D.W. Va. Oct. 4, 2016) (applying Texas law to deny summary judgment in a case in which the plaintiff received a TVT-S implantation surgery in Texas).   The court is unconvinced that the procedures in the MDL court required Robinson to wait to file expert opinions relating to state-specific claims.   These opinions were subject to the same expert report deadline as the general expert opinions.

Robinson contends that the reports she filed in the MDL court provided a general overview of her experts' "anticipated testimony at that time" and that only when the case was remanded did she need to tailor the reports to Texas law.   Dkt. 134.   To the extent Robinson did not anticipate at the time she filed the original reports that the case was coming back to Texas and her experts may need to address Texas law, she should have.   The trial was not taking place in Virginia, and even if it were to take place in Virginia, it is almost certain that Texas law would be applied. *See Lankston*, 2016 WL 5843723, at *3.   This argument is also unpersuasive.

Robinson also contends that Mays relies on a new study so the opinions that Defendants claim should have been provided initially because the information is not new actually do rely on

new information.  Dkt. 134.  This "new" study is a paper by V. H. Eisenberg that was published in 2019.  *Id.*  Robinson states that Mays completed his initial report in 2017 and that while the supplement was not submitted immediately after the new study, it was submitted in a "timely manner" under Rule 26(e).  *Id.*  Defendants point out that Mays cites over thirty-five articles in his supplemental report, and all but one of the articles predates his original 2017 report.  Dkt. 136.  The 2019 article was cited once in a string cite that also included an article from 2015.  *See id.*; *see also* Dkt. 125, Ex. B at 16 (Mays's supplemental report) (citing Klinge 2015 and Eisenberg 2019 for the proposition that "PVDF can be coated and will be visible in MRI scans").  The fact that the 2019 study is not the only study supporting the statement for which it is cited calls into question how "new" the information for which Mays cites the 2019 study really is; so does the fact that the "new" study was published in 2019 and it is now 2021.  If the 2019 study indeed provided new scientific information that had a impact on Mays's and Galloway's opinions, then waiting two years to provide this information to the opposing party is more akin to gamesmanship than timely supplementation.  The court is not convinced the information provided by the cited 2019 study was new in 2019; regardless, it was not provided in a timely manner.

Finally, Robinson implies that the Texas law requirement that requires a showing of alternative designs rather than alternative procedures is new.  *See* Dkt. 134 at 8.  She cites a similar case in this district in which Judge Gilmore "recently held that alternative procedures were not sufficient to satisfy the 'feasible alternative design' standard for implanted devices."  *Id.*  She in fact provides a substantial block quote that discusses how Texas law requires a "'safer and feasible alternative design to the alleged defective designs, not different procedures or strategies entirely.'"  *Id.* (quoting *Pizzitola v. Ethicon, Inc.*, No. 4:20-CV-2256, 2020 WL 6365545, at *4 (S.D. Tex. Aug. 31, 2020)).  To support this statement of the law, Judge Gilmore cited a 2014 case from the

10

Fifth Circuit (*Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322 (5th Cir. 2014))

and a 1995 Texas Supreme Court case (*Caterpillar, Inc. v. Shears*, 911 S.W.2d 379 (Tex. 1995)).

This is not new law.  *See, e.g.*, *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab.

Litig.*, 888 F.3d 753, 766 (5th Cir. 2018) ("The Texas Supreme Court and intermediate courts have

held that a 'substantially different product' cannot constitute a safer alternative design." (citing

*Caterpillar* and *Brockert v. Wyeth Pharms., Inc.*, 287 S.W.3d 760, 770 (Tex. App.—Houston [14th

Dist.] 2009, no pet.)); *Cofresi v. Medtronic*, 450 F. Supp. 3d 759, 766 (W.D. Tex. 2020) (Ezra, J.)

(agreeing with the defendant that "under Texas law and within this Circuit, 'a plaintiff cannot

prove design defect by claiming that defendant should have sold an entirely different product'"

(citing *Caterpillar* and *Brockert*)); *Fearrington v. Bos. Sci. Corp.*, 410 F. Supp. 3d 794, 804–05

(S.D. Tex. 2019) (Lake, J.) ("But the availability of alternative treatments or devices does not show

that safer, feasible alternative designs were available for the Pelvic Mesh Products themselves.");

*see also Theriot v. Danek Med., Inc.*, 168 F.3d 253 (5th Cir. 1999) (holding in a case about pedicle

screws that other products such as internal systems using hooks or wires or external neck braces

did not demonstrate a "safer alternative design" under Louisiana law).  Thus, while Robinson

asserts that the supplements were an attempt to "comply with the applicable standard outlined by

the Court in *Pizzitola*," a better practice would be to have the original reports comply with the

established case law upon which *Pizzitola* relied.

The court finds that the objected to supplemental opinions were not supplemental opinions

and instead were improper new opinions provided outside of the deadline set by the MDL court.

**B.    Was the Delay Substantially Justified and Harmless?**

Robinson argues that the court should not strike the reports because any delay in filing

these expert opinions was substantially justified and harmless.   Dkt. 134 (citing Rule 37

11

(instructing that the party may not use information if it was not properly disclosed or supplemented under Rule 26 "unless the failure was substantially justified or is harmless").  In exercising its discretion to strike the opinions under Rule 37 for failure to timely disclose, the court considers the following:

> (1) the importance of the witnesses' testimony;
> (2) the prejudice to the opposing party of allowing the witnesses to testify;
> (3) the possibility of curing such prejudice by granting a continuance; and
> (4) the explanation, if any, for the party's failure to comply with the discovery order.

*Sierra Club*, 73 F.3d at 572.

Robinson asserts that each of the *Sierra Club* factors weighs in favor of allowing the new reports.  Dkt. 134.  She contends that (1) the testimony is critical to her case because the standards for a safer alternative design specific to Texas law; (2) there is no prejudice to Defendants because the alternative design suggested in the reports "has been discussed at length throughout the MDL" so there is no surprise; (3) docket call is not until December 23, 2021, so if any continuance is necessary for this "minor supplement," it would be short; and (4) she failed to provide the reports sooner because it was not necessary to provide information about Texas law until the case was remanded to a Texas court.  *Id.*

Defendants argue that Robinson fails to justify her delay or establish that it was harmless. Dkt. 136.  They point out that they filed their motion for partial summary judgment in the MDL in 2019, and that motion essentially provided a roadmap to Robinson of the deficiencies in her proof. *Id.*  Yet, she did not attempt to supplement her experts' opinions until the case was transferred to this court.  *Id.*  Defendants assert that Robinson's noncompliance thwarts the efficiencies achieved by the MDL court and that Robinson has provided no justification for doing so.

12

The court agrees with Defendants.  While certainly the first factor weighs in Robinson's favor as the information is important, Robinson knew at least by August of 2019 that Defendants were arguing that Texas law required alternative designs and that Galloway's opinion provided only alternative procedures and not alternative designs.  *See* Dkt. 46 (motion for partial summary judgment filed in the MDL) (noting that Galloway suggested three alternative procedures but no alternative designs, that Texas law applies, and that a safer alternative design is a prerequisite to liability for a design defect under Texas law).  The purpose of the MDL is to increase efficiency in these cases, and Robinson's strategy of holding these opinions until discovery was complete and the case was remanded to this court is contrary to that purpose.  *See In re: Deepwater* Horizon, 907 F.3d 232, 235 (5th Cir. 2018) ("[T]he very purpose of the centralization before the transferee judge is the efficient progress of the cases in preparation for trial."); *cf. Conn v. C.R. Bard, Inc.*, No. 4:14-CV-298, 2021 WL 2328389, at *3 (S.D. Tex. June 8, 2021) (Hanen, J.) (striking expert opinions not disclosed in the MDL).  The court finds that Defendants will be prejudiced if the court allows this late supplement because they have already relied on the original expert reports to file the motion for partial summary judgment, twice, and moreover, it is unfair to delay this case after the case was remanded to this court as being ready for trial.  The MDL judge remanded the case with a stern warning not to reopen discovery, a warning this court will heed.  Allowing these new opinions would result in additional discovery and additional delay.  The court find that the second, third, and fourth factors weigh in Defendants' favor, and the balance of the factors weighs against allowing the new opinions.  The court concludes that Robinson's failure to provide these opinions in the first instance was not substantially justified and harmless.

13

## IV. CONCLUSION

Defendants' motion to strike (Dkt. 125) is GRANTED.  Other than the opinions expressed in Section III of Mays's supplemental report dated March 20, 2021, the report is STRICKEN.  All of the opinions in Galloway's supplemental report dated May 24, 2021, are STRICKEN.

Signed at Houston, Texas on September 2, 2021.

Gray H. Miller
Senior United States District Judge

14