UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARIA ROBINSON, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-20-03760 |
| § | |
| ETHICON, INC. and JOHNSON & JOHNSON, § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendants Ethicon, Inc., and Johnson & Johnson's (collectively, "Ethicon") motion to exclude certain opinions and testimony of plaintiff Maria Robinson's expert, Robert P. Tremp, Jr. Dkt. 131. After considering the motion, response, reply, and applicable law, the court is of the opinion that the motion to exclude should be DENIED.

### I. BACKGROUND

In October 2011, Plaintiff Maria Robinson had a surgery to have a medical device called the TVT-Obturator ("TVT-O") implanted; this is a pelvic mesh product. Dkt. 63-1 (long from complaint). The surgery was supposed to relieve Robinson's stress urinary incontinence ("SUI"). Robinson alleges that she has suffered life altering injuries as a result of the implant and has undergone multiple removal surgeries. Dkt. 142. Consequently, she sued Ethicon, asserting numerous claims. Dkts. 1, 63. After extensive litigation, including multi-district litigation ("MDL") proceedings and a remand to this court, the claims that remain are failure to warn and negligent misrepresentation. *See* Dkt. 159.

Robinson designated Robert P. Tremp, Jr., MA, CRC, CLCP, LAC, as a case specific expert while this case was part of the MDL (Pelvic Repair System Products Liability Litigation

MDL No. 2327). It is undisputed that Robinson timely served her expert disclosures on May 24, 2019, and she furnished Tremp's report at that time. *See* Dkts. 131, 142. On August 15, 2019, while the case was still part of the MDL, Ethicon filed a motion to exclude Tremp's testimony. Dkts. 131, 142. This motion was still pending when the case was transferred to this court. On November 10, 2020, this court issued an order denying the motion to exclude expert testimony without prejudice to refiling. Dkt. 84. The parties then filed a joint discovery/case management plan in which they noted that Robinson would serve her supplemental disclosures by May 24, 2021, and Ethicon would file its supplements by June 21, 2021. Dkt. 106. On May 21, 2021, Robinson timely served a newly drafted Tremp report. *See* Dkt. 125, Ex. C. Ethicon now renews its motion to partially exclude opinions offered in the 2019 report and moves to exclude some of the opinions offered in the 2021 report as well. Dkt. 131.

      The first question proposed by the parties is whether the life care plan attached to the Tremp report filed on May 21, 2021, was meant to take the place of the 2019 life care plan or supplement it. Ethicon contends the new report, which includes a life care plan drafted in 2021 that purports to outline "all" of Robinson's needs, supersedes the earlier life care plan, thus making the 2019 life care plan null and void. Dkt. 131. Robinson contends the 2021 life care plan merely supplements and updates the 2019 plan. Dkt. 142. The second issue is whether, if the court decides to consider the 2019 plan, opinions he offered in that plan should be stricken because Tremp did not consult with a medical doctor. And the third issue is whether aspects of the 2021 life care plan should be excluded because they were available before 2019 and rely on opinions from other expert opinions that have been stricken or excluded, and whether the 2019 vocational report provides opinions that are speculative or lack foundation.

## II. Whether the 2021 Life Care Plan Nullifies the 2019 Plan

The first issue is whether the updated life care plan that Tremp attached to his 2021 supplemental report was meant to supplement the original life care plan or completely replace it. Rule 26(e) requires parties to supplement expert materials "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Evid. 26(e). The parties agreed that Robinson would file supplemental reports as permitted in Rule 26(e)(2) by May 24, 2021. Dkt. 106. Robinson provided a report in a timely manner, but the parties disagree about the effect the life care plan Tremp attached to the 2021 report has on the 2019 life care plan.

Ethicon argues that the 2021 life care plan is an entirely new plan, rendering the previous plan null and void. Dkt. 131. It points out that Tremp states in his new report that the 2021 life care plan "'outlines *all* of Ms. Robinson's needs dictated by the onset of disability throughout her life.'" Dkt. 131. Tremp also indicates that the 2021 life care plan is an "update" and notes that the 2021 plan does not include all of the types of care and expenses listed in the 2019 plan. *Id.* Ethicon argues that "[b]ecause the 2021 Report purports to include all life care opinions" that it "supersedes the original Life Care Plan" and that the 2019 Life Care Plan "should be excluded in its entirety." *Id.*

Robinson disagrees. She notes that Tremp made recommendations in the new life care plan after he consulted with Robinson's treating physicians but that the opinions in the 2019 plan that are not referenced in the 2021 plan and report remain unchanged. Dkt. 142. Robinson agrees that Tremp's opinions about her needs for physical therapy, pelvic floor physical therapy, and

3

gynecological evaluations changed. *Id.* She argues, however, that the remaining portions of the original life care plan remain unchanged and the new plan merely "serves to bridge the gap in the two-year period of time during which Ms. Robinson continued to progress in the treatment of her injuries" since the original report. *Id.*

In the reply, Ethicon continues to argue that the 2021 plan is a complete update outlining all of Robinson's needs. Dkt. 149.

If this were a statutory or contract interpretation question, the court may agree with Ethicon that the plain language of the 2021 update indicates that it is an amendment to the 2019 plan, not a supplement. For instance, the 2021 report states that it was "finalized" May 21, 2021. Dkt. 131-3. In the conclusion of this report, Tremp states that the "Life Care Plan prepared on 5/24/19 has been updated, and it is attached as Appendix A. The updated Life Care Plan outlines all of Ms. Robinson's needs dictated by the onset of disability throughout her life expectancy." *Id.* Tremp states that the "Life Care Plan is a dynamic document based upon published standards of practice, comprehensive assessment, data analysis, and research. . . . The goals of a *comprehensive* Life Care Plan are to improve and maintain the clinical state of the patient . . . ." *Id.* Tremp also specifies that the vocational report he prepared in 2019 was not updated. *Id.* He reserves the right to "amend the opinions" if new information is presented. *Id.* There is no language in the 2021 document that indicates that any of the 2019 recommendations that are not included in the 2021 report remain viable; there is language stating that the 2019 vocational report remains viable. *See id.* Moreover, as Ethicon points out in its reply, Tremp did not include only new items in the 2021 plan. *See* Dkt. 149 at 1 n.2. Some of the items were in the 2019 plan, such as a recliner, cane, and incontinence supplies were included in both plans, but other items, such as donut pillows and bidets, were not included in the 2021 plan. *See id.* ("If Tremp's opinions still include all of these

4

items, it is unclear why and frankly illogical that the 2021 Plan would list some but not all of them.").

The difficulty is that the court is not trying to interpret a contract or statute, it is considering whether the plaintiff's expert's newly filed report is, as the plaintiff states, a true supplement. If it were a contract or a statute, the court may use the rules of interpretation and determine that the plain language of the 2021 life care plan indicates it is meant as the complete plan. Here, however, the plaintiff is in the best position to know if the document she filed is meant to be read in conjunction with the 2019 life care plan or independently. She asserts that the expert meant it to be read together. The court defers to the plaintiff's characterization of whether her expert meant to file a supplemental life care plan or a completely new plan. If the plaintiff is mischaracterizing the expert's intent, this will be easily revealed through cross examination. Ethicon's motion to exclude any testimony relating to the 2019 life care plan because it is null and void is DENIED.

### III. STRIKING EXPERT TESTIMONY

The court must rely on the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals* to resolve the remaining issues. The U.S. Supreme Court acknowledged in *Daubert* that Federal Rule of Evidence 702 serves as the proper standard for determining the admissibility of expert testimony. 509 U.S. 579, 597-98, 113 S. Ct. 2786 (1993). The party offering expert testimony has the burden to prove by a preponderance of the evidence that the proffered testimony satisfies the admissibility requirements of Federal Rule of Evidence 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based

> on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under *Daubert*, a trial court acts as a "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the *ipse dixit* of the expert. *GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

In addition to being qualified, an expert's methodology for developing the basis of his or her opinion must be reliable. *Daubert*, 509 U.S. at 592-93; *Moore*, 151 F.3d at 276. "The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Moore*, 151 F.3d at 276. Even if the expert is qualified and the basis of her opinion is reliable, the underlying methodology must have also been correctly applied to the case's particular facts for her testimony to be relevant. *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *See* Fed. R. Evid. 104(a); *Moore*, 151 F.3d at 276. The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified, and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276.

A.     **The 2019 Life Care Plan**

While Ethicon primarily argues that the court should exclude the 2019 life care plan because the 2021 life care plan is an amended plan that renders the 2019 plan null and void, it also moves to exclude the 2019 life care plan because Tremp is unqualified to offer the opinions he sets forth in the plan or they are otherwise unreliable or irrelevant. Dkt. 131. Ethicon contends that (1) Tremp is not qualified to offer the opinions he offers in the 2019 plan because he is not a physician, and (2) the opinions Tremp offers are irrelevant or unreliable because he failed to consult with a physician prior to making his 2019 recommendations. Dkt. 131.

Robinson points out that Tremp stated in the 2019 life care plan that a medical provider would dictate the necessity of additional treatment. *Id.* (citing Dkt. 131-1 at 2). She notes that Tremp is a certified life care planner and a certified rehabilitation counselor, has a masters degree in special education and rehabilitation counseling, is licensed as an associate counselor in Arizona and has been licensed as a provisional mental health counselor in Florida. *Id.* She argues that a life care expert need not hold a medical degree to be qualified to offer opinions about the need and cost of future care. *Id.* (citing *Lee v. Fischer*, No. CV108-016, 2009 WL 10678390, at *2 (S.D. Ga. July 10, 2009)). She also asserts that a life care expert need not communicate directly with the treating physician to formulate the plan. *Id.* She argues that as a certified counselor and life planner, Tremp is qualified to assess the need for therapy, therapeutic devices, supplies, and dietary aids. *Id.* She notes that as far as future medical care, under Texas law she need only establish a reasonable medical probability for future damages, and, regardless, the report of Galloway, a medical doctor, addresses the medical harm Robinson has now and will have in the future, and Tremp relied on Galloway's conclusions about Robinson's medical condition even if he did not actually interview Galloway prior to preparing the 2019 life care plan. *Id.*

7

In reply, Ethicon argues that case law requires an expert testifying about the need for specific future medical care be a doctor. Dkt. 149. It points out that Tremp did not directly consult with Galloway until after the 2019 life care plan, so Galloway's 2021 responses cannot support the 2019 recommendations. *Id.* It also notes that Tremp is recommending various treatments in the 2019 life care plan, including ongoing use of prescription medications, without a medical opinion. *Id.* It argues that because Tremp is not a healthcare provider, he cannot provide opinions relating to the need for and extent of use of future medical care without a firm medical foundation. *Id.* He may only opine on the costs of future care, not the need for that care. *Id.*

Under *Daubert* and its progeny, Robinson must show by a preponderance of evidence that Tremp is qualified and that the recommendations in Tremp's 2019 report are relevant and based on reliable methodology. She asserts that Tremp is a certified rehabilitation counselor and qualified to opine as the general need for and cost of occupational therapy and that he specifically stated that the treating therapist would determine the treatment plan and strategy. Dkt. 142. With regard to therapy, Robinson notes that Tremp is a licensed therapist and also relied on the clinical practice guidelines, which recommend therapy. *Id.* She contends Tremp is qualified to opine on the equipment needed because he is a certified rehabilitation counselor. *Id.*

The court agrees with Robinson that Tremp is qualified to offer opinions in the areas in which Tremp specializes as a certified rehabilitation counselor and licensed therapist—including opinions about occupational therapy evaluations and sessions, psychological and therapy evaluations and psychotherapy sessions, equipment and supplies, and dietary bulking agents. He has provided the reasons for the recommendations that render them relevant to this case, and there is no indication that his methodology for concluding these categories of care were needed is unreliable.

The question that remains is whether Tremp is qualified to testify about certain diagnostic testing, trigger point injections, and future medications as a life care planner when he is not a medical doctor and whether, since he did not consult directly with a medical doctor prior to offering opinions about these categories, his opinions are unreliable or irrelevant. Some discussion of other cases involving life care planners proves instructive.

Both parties cite *Lee v. Fischer*. In that case, the life care planner "admitted that, in order for her plan to be valid, the vast majority of it must be supported by the opinion of a treating medical provider." 2009 WL 10678390, at *2. The court found that "[t]he fact that [the expert] is not a physician does not make her any less qualified to testify regarding Plaintiff's life care plan by knowledge, skill, experience, training, or education." *Id.* The court noted that the expert was "unqualified to render diagnoses or prognoses regarding medical issues, [but that the] Plaintiff [did] not offer her as an expert on Plaintiff's diagnoses or prognoses. Instead, she has relied on . . . [the] Plaintiff's physician . . . to confirm that the items listed in her life plan report are medically necessary." *Id.*

The federal district court in the Middle District of Florida recently addressed a similar question. *See Hannah v. Armor Corr. Health Servs., Inc.*, No. 8:19-cv-596-TPB-SPF, 2021 WL 1777955, at *2 (M.D. Fla. Mar. 8, 2021). The plaintiff objected to a certified life care planner's testimony about placement in a nursing home because the life care planner was not a doctor. *Id.* The court found that the life care planner did not have to be a medical doctor to offer his opinions, was "qualified to testify as a life care expert," the "methodology [was] sound and comport[ed] with *Daubert* requirements," and the plaintiff's objections went to the weight and credibility of the expert, not admissibility. *Id.* (citing six federal district court cases in which objections to a life care planner's testimony about medical matters were overruled).

Finally, the court considers three cases that involved the very same experts or products. *Burris v. Ethicon, Inc.*, No. 3:20CV1450, 2021 WL 3190747 (N.D. Ohio July 28, 2021), involves Tremp, Ethicon, and Galloway. The *Burris* court considered whether Tremp's opinions in his life care plan were unreliable because no doctor had opined that the items in the plan were medically necessary. 2021 WL 3190747, at *19. The court first found that Tremp's opinions that the plaintiff "may need a rehabilitation assessment, psychological evaluation, individual counseling, a scooter and rollator walker and various accessories, home safety items, incontinence supplies, a housekeeper, lawn care/maintenance assistance, and over-the-counter medication" was within his expertise areas. *Id.* (collecting cases). It then addressed Tremp's opinions regarding "the need for evaluations by a pain management specialist, primary care physician, physical therapist, urogynecologist, and urologist." *Id.* at *20. The court determined that these opinions were "sufficiently based on Dr. Galloway's (admittedly broad) opinion that Plaintiff will require lifetime medical care, the medical record documenting Plaintiff's treatment and ongoing conditions, and Mr. Tremp's interview with Plaintiff." *Id.* The court permitted the testimony and noted that it was "confident Defendants can address their concerns with Mr. Tremp's testimony through vigorous cross-examination." *Id.*; *cf. Cunningham v. Harmon*, No. 15-CV-159-J, 2017 WL 2129731, at *3 (D. Wyo. Feb. 17, 2017) (noting that the defendants "are free to both expose [the expert's] unfamiliarity with the Plaintiff's diagnosis on cross examination, or draw out how [the expert's] analysis would change were Plaintiff's injuries found to be less severe"). The court found, however, that Tremp could not testify about the need for any "'specific medical procedures'" "absent evidence adduced at trial that they are medically recommended." *Id.* at 19 n.7 (quoting and relying on *In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2327, 2014 WL 186872, at *12 (S.D.W. Va. Jan. 15, 2014)).

10

Another recent court opinion addressing Tremp's opinions goes in the different direction. *See Smith v. Ethicon, Inc.*, No. 6:20-CV-222-REW-HAI, 2021 WL 4098408 (E.D. Kentucky Sept. 2, 2021). The *Smith* court excluded Tremp's testimony after finding that Tremp "must build on a medical expert's foundation" and concluding that he "did not directly tie his recommendation to independently established qualified expert opinions." *Id.* at *14 (also relying on *In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, 2014 WL 186872, at *12).

Both the *Burris* court and the *Smith* court rely on one of Judge Goodwin's orders in the MDL. In that order, Judge Goodwin held that a life care planner could not testify about future medical costs unless they were "very specifically grounded in [a medical doctor's] opinions." 2014 WL 186872, at *13. The *Hannah* court and cases upon which it relied also support the idea that a life care planner need not be a physician to offer opinions about the cost of the patient's future medical needs, and the *Lee* court likewise supports the idea that medical experts are needed to testify about the diagnosis and prognosis, but the life care planner can use the diagnosis and prognosis to formulate a life care plan. The main question proposed under the case law the parties have presented and the court has reviewed is whether, when considering whether to allow a life care planner's testimony about future medical needs, the recommendations for medical treatment are "very specifically grounded" in a medical doctor's opinions.

In the 2019 life care plan, Tremp discussed what he learned during his interview with Robinson, and he thoroughly set forth her medical records and discussed Galloway's 2019 findings. Dkt. 49-2. Tremp noted that Galloway found Robinson was "disabled as a result of the complications from this device, and continues to live with on-going problems of extreme pain and lack of mobility that interferes with her quality of life and the activities of daily living." *Id.* Specifically, Tremp noted that Galloway found that Robinson "has experienced mesh-related

11

complications including vaginal mesh exposure, vaginal pain, chronic pelvic pain, thigh and groin pain, UTI, bladder/bowel dysfunction, and pudendal neuralgia." According to Tremp, "Dr. Galloway stated these injuries are the direct result of the defects inherent in the Gynecare TVT-O device, including some chronic inflammation, foreign body reaction, shrinkage, deformation, scarring and fibrosis, hardening, nerve damage, and degradation of the polyprolene mesh" and these "injuries were foreseeable based on experience with hernia mesh and the use of mesh in other pelvic applications." *Id.* As far as the prognosis, Tremp reports that Galloway found that Robinson's "prognosis was guarded due to the chronicity of her symptoms and the persistence of her pelvic groin and thigh pain that has occurred, along with the diagnosis of pudendal neuralgia. Dr. Galloway also stated that Ms. Robinson might still have remaining residual mesh fragments in the anterior compartment and groins and it was likely that she will require additional medical, and possibly surgical treatment to address her ongoing chronic pelvic pain and other symptoms." *Id.*

Like in *Burris*, the medical doctor's report offers broad statements about continued medical care, but it provides sufficient grounding for the types of treatments Tremp discusses in Robinson's 2019 life care plan. Like in *Burris*, Tremp may not testify that Robinson needs any treatments that would require approval or prescription from a medical doctor, but he may testify about those tests, medicines, and procedures would cost if a medical doctor were to recommend or prescribe them. And, of course, he can offer an opinion—subject to cross examination—about the items in the life care plan that do not require approval of a medical doctor that fall within his area of expertise. The key takeaway is that Tremp's 2019 opinions about certain tests, medicines, and procedures must be considered in conjunction with the opinions of a medical doctor, and Ethicon can examine whether these are appropriate considerations in the life care plan via vigorous cross examination of both the physician and the life care planner.

12

Ethicon's motion to exclude the 2019 life care plan is DENIED.

**B.     The 2021 Life Care Plan**

Ethicon argues that the 2021 life care plan should be stricken because Tremp provides allegedly new information that was available before the original report was filed in 2019 and he relies on opinions from other experts that have been stricken or excluded. Dkt. 131. Robinson asserts that the 2021 life care plan is "a true supplement to his original report" that was necessary because Robinson "continued treat[ment] for the injuries she sustained as a result of the mesh since 2019, when Tremp created his original Report." Dkt. 142. Tremp re-evaluated Robinson in 2021 and relied on records from after his 2019 life care plan was drafted to make his recommendation. *Id.* He also consulted with Galloway in order to update his opinions. *Id.* In reply, Ethicon clarifies that it is not opposed to Tremp's supplemental opinions based on newly available records, but it is opposed to any opinions using information obtained from Galloway that could have been obtained in 2019. Dkt. 149.

    **1. Relying on Stricken Supplemental Opinions**

First, Ethicon contends that any of Tremp's opinions that are based on the supplemental opinions of Galloway that the court has stricken should be excluded as untimely. Dkt. 131. Robinson notes in her response that Tremp was not even provided with Galloway's supplemental opinions, so he could not have relied on them for the 2021 life care plan. Dkt. 142. Because Tremp did not rely on the stricken supplemental opinions, Ethicon's motion to strike any opinions relying on them is DENIED AS MOOT.

    **2. Relying on Galloway's Opinions That Are Not New**

On May 17, 2021, Tremp sent Galloway a questionnaire with a cover letter asking him to provide information "relative to [Robinson's] continuing medical care needs related to the vaginal

13

mesh surgery done in 2011" because Tremp was "updating a Life Care Plan prepared for [Robinson] in 2019." Dkt. 131, Ex. C. Ethicon argues that Tremp's opinions based on his correspondence with Galloway could have been obtained prior to 2019 and therefore should be excluded. *Id.*; Dkt. 149. Robinson argues that the 2021 life care plan is a "true supplement," noting that Tremp specifically indicates that the 2021 life care plan takes into account changes in Robinson's functional capacity since the 2019 report. Dkt. 142. In reply, Ethicon asserts "to the extent Tremp now reasserts costs and treatment included in the 2019 Report, these are clearly not based on any new information. Plaintiff may not disclose them as supplemental opinions merely because Dr. Galloway has reviewed and rubber-stamped them after-the-fact when he was available to review them in the first place." Dkt. 149.

The court agrees that Tremp could have met with Galloway before submitting the 2019 report. However, since the court is allowing the 2019 life care plan anyway, there was no need to have Galloway's "rubber stamp" on the projections in the 2021 report. Moreover, the update after consultation with Galloway will aid the jury and the court. Ethicon's motion to exclude Tremp's opinions that rely on his interview with Galloway is DENIED.

**C.     The Vocational Report**

Next, Ethicon contends that Tremp's opinions about Robinson's future earning capacity in the vocational report, which was completed in 2019 and incorporated into the 2021 report, are speculative and lack foundation. Dkt. 131. Ethicon asserts that Tremp does not connect the alleged disability to the TVT-O device and that no physician has attributed the conditions Tremp points to as being caused by the TVT-O. *Id.*

Robinson responds that the vocational report indicates that the reason Robinson cannot perform work in her previous occupation as a structural designer/architect is because of pain in her

pelvis, groin, legs, and elsewhere that make it difficult to sit and require breaks every twenty minutes. Dkt. 142. She points out that Galloway opined that Robinson was experiencing chronic pelvic pain, thigh and groin pain, UTI, bladder and bowel dysfunction, and pudendal neuralgia because of the vaginal mesh. *Id.* (citing Dkt. 53-2 at 21). She reiterates that a "life care planner/vocational expert cannot and does not testify as to causation issues," and notes that causation of the issues that render Robinson unable to perform her previous job are addressed by Galloway. *Id.*

While the court agrees with Ethicon that the ailments Tremp contends limit Robinson's ability to engage in her profession must be linked to the TVT-O for a jury to award damages for loss of future earning capacity, most of the problems outlined by Tremp that impact Robinson's ability to productively engage in her profession are substantially similar to the problems Galloway asserts are caused by pelvic mesh. It does not take a medical degree to conclude that one who is experiencing chronic pelvic, thigh, and groin pain likely cannot sit at a desk all day, and bowel and bladder dysfunction do not help. Ethicon points out that Tremp indicates one of the factors impacting Robinson's ability to work is her grip strength, and Ethicon asserts there is no link between TVT-O and grip weakness. The fact that Tremp has not linked every condition impacting Robinson's vocational abilities to medical testimony indicating it was caused by the TVT-O goes to the weight, not the admissibility, of the vocational report. Under the *Daubert* requirements, there is no indication that Tremp is not qualified to opine about Robinson's ability to work and earning capacity or that his methods in making those determinations were unreliable. And everything that causes her not to be able to perform her job as needed is certainly relevant. In fact, it would be helpful to the jury to know if a non-TVT-O-related reason has impacted Robinson's ability to work. Ethicon is free to explore the extent to which the TVT-O implant and alleged

15

associated problems may have impacted Robinson's ability to perform the tasks needed in her field of work during cross examination of Tremp and the medical experts; it does not render Tremp's entire opinion regarding Robinson's future earning capacity inadmissible. Ethicon's motion to exclude the vocational report is DENIED.

## V. Conclusion

Ethicon's motion to exclude Tremp's testimony is DENIED.

Signed at Houston, Texas on January 13 2022.

_____
Gray H. Miller
Senior United States District Judge